

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| | | |
| TERANCE CHESTER ADOLPHUS GILKES and | * | Case No. 03-20469-NVA |
| DEIDRE RENEE CECILE GILKES, | * | (Chapter 13) |
| | | |
| Debtors. | * | |
| | | |
| *  *  *  *  *  * | * | |
| | | |
| CHASE MANHATTAN MORTGAGE CORPORATION, | * | |
| | | |
| | * | |
| Movant, | | |
| | | |
| v. | * | |
| | | |
| TERANCE CHESTER ADOLPHUS GILKES, and | * | |
| DEIDRE RENEE CECILE GILKES, and DESIREE DAVID, Co-Debtor, | * | |
| | | |
| | * | |
| Respondents. | | |
| | * | |

*  *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER REGARDING MOTION
OF CHASE MANHATTAN MORTGAGE CORPORATION TO RECONSIDER
AGREED ORDER MODIFYING AUTOMATIC STAY AND
IMPOSING EQUITABLE SERVITUDE [28]**

The Court has before it the Motion (the "Motion") [28] of Chase Manhattan Mortgage Corporation (the "Secured Creditor") to Reconsider Agreed Order Modifying Automatic Stay and Imposing Equitable Servitude, filed on December 27, 2004. In the Motion, the Secured Creditor asked this Court to reconsider certain language it added to the Agreed Order Modifying Automatic Stay and Imposing Equitable Servitude (the "Consent Order") [26], entered by the Court on December 12, 2004. The Debtors and Desiree David, a non-filing co-debtor ("Ms. David"), did not file a response to the Motion. The language added to the Consent Order by this Court is as follows:

> "So Ordered, except that the equitable servitude provisions of this Order do not apply to any current co-owner of the real property identified in paragraph 8 hereof, other than the debtors in this case."

*See* Order, endorsement, December 12, 2004 [26].

A hearing on the Motion was held on March 24, 2005. The Debtors attended the hearing. Ms. David did not. At the hearing, the Court asked counsel for authority in support of the Secured Creditor's position that an equitable servitude should be imposed against Ms. David, who was not alleged to be involved in the pattern of serial bankruptcy filings by or with the Debtors. Counsel indicated that he did not have any direct authority but that as a co-obligor on the mortgage, she was receiving the benefit of the Debtors' multiple filings and interference with the Secured Creditor's attempt to foreclose. Although the Court originally determined to deny the relief sought, it subsequently decided to reconsider the matter and took the matter under advisement. The Court has  heard the evidence and has had the benefit of argument of counsel. The Court now issues this Memorandum of Decision of its findings of fact and conclusions of law in support of its Order Regarding Motion of Chase Manhattan Mortgage Corporation to

2

Reconsider Agreed Order Modifying Automatic Stay and Imposing Equitable Servitude.  Said Order will be entered contemporaneously with this Memorandum.

## I.    FACTS

The Debtors have filed three joint bankruptcy petitions over the last five years, each on the eve of, or very near to, a scheduled foreclosure on real property located at 6411 61st Place, Riverdale, Maryland (the "Property").  The first case was filed on December 5, 2000, Case No. 00-22916-PM, the day before foreclosure.  This case was dismissed on December 12, 2001 for failure to make plan payments.  The second case was filed on March 12, 2002, Case No. 02-13118-PM, about eight days before foreclosure.  This case was dismissed on October 18, 2002 after the Debtors failed to present a plan capable of being confirmed.  The third and present case was filed on December 9, 2003, two days before foreclosure.

The Debtors are indebted to the Secured Creditor under a deed of trust and other loan documents.  Ms. David is a co-obligor on the loan.  As of the March 24, 2005 hearing, the Secured Creditor was owed approximately $36,000 in prepetition arrearages.  On September 1, 2004, the Secured Creditor filed a Motion (the "Lift Stay Motion") to Modify Stay to Permit Foreclosure of the Deed of Trust and for Imposition of an Equitable Servitude [24].  The Debtors and Ms. David were named in the Lift Stay Motion as respondents.  Neither the Debtors nor Ms. David filed a response to the Lift Stay Motion despite proper service.

On December 12, 2004, the Debtors and the Secured Creditor entered into the Consent Order [26].  Pursuant to the Consent Order, the automatic stays under 11 U.S.C. §§ 362 and 1301 were modified, and an equitable servitude was imposed as to the Debtors for 180 days from the date thereof.  The Secured Creditor's Motion was filed on December 27, 2005 and the hearing on

3

reconsideration of the exclusion of Ms. David from the equitable servitude was heard on March 24, 2005. Ms. David was served with copies of the Motion and notice of the March 24, 2005 hearing, but did not appear.

## II.    DISCUSSION OF LEGAL PRINCIPLES

The starting point for the Court's analysis is the Maryland case *In re Yimam*, 214 B.R. 463 (Bankr. D. Md. 1997). In that case, Mr. and Ms. Yimam, husband and wife and co-owners of certain real property located in Potomac, Maryland had taken turns filing seven bankruptcy petitions in a period of four years and had not paid the mortgage for five years. In all seven cases, the debtors made no effort to prosecute the case, including, for example, no attendance at the meeting of creditors under 11 U.S.C. § 341 or proposing a plan capable of being confirmed. The court found that the Yimams had engaged in a "continuous use of the bankruptcy system for the purpose of forestalling foreclosure." *Id*. at 465. The court further found that an equitable servitude would be imposed on the property in order to "bind subsequent purchasers of the property just like an equitable servitude, even though these purchasers are not before the Court and have not even been determined at the present time. The Court finds it appropriate to extend the law of equitable servitudes to such a servitude imposed by a court on real property, so that it binds subsequent owners." *Id*. at 466.

In fashioning this relief for the creditor as a result of the debtor's abuse of the bankruptcy process, the court looked to a California case, *In re Snow*, 201 B.R. 968 (Bankr. C.D. Cal. 1996). In that case, the court was confronted with a situation where an owner of property subject to foreclosure (who happened to be in bankruptcy at the time) transferred a fractional interest

therein to several others, one of whom filed his own bankruptcy petition. The *Snow* court found that an equitable servitude was necessary to prevent continuing abuse by the debtor.

Maryland recognizes equitable servitudes. *In re Yimam*, 214 B.R. at 467. An equitable servitude arises in cases where one or more of the requirements for the existence of a covenant running with the land are not met, but: (1) the subsequent owner has notice of the covenant; (2) the holder of the servitude is seeking only equitable relief; and (3) it would be inequitable to deny enforcement of the servitude. *In re Snow*, 201 B.R. at 973. The basic purpose of the doctrine is to prevent a subsequent possessor or user of the land to set up the defense of a bona fide purchaser. *In re Yimam*, 214 B.R. at 466, n. 2 (citation omitted). Notice to the subsequent purchaser is therefore a key consideration and will be discussed in further detail below.

Bankruptcy courts have imposed equitable servitudes in cases where a pattern of abuse of the bankruptcy system is clear, either by an individual debtor filing multiple bankruptcy petitions on the eve of foreclosure (*see e.g., Aurora Loan Services, Inc. v. Amey (In re Amey),* 314 B.R. 864 (Bankr. N.D. Ga. 2004) (debtor filed four petitions over two years); *County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*, 317 B.R. 144 (Bankr. E.D. Cal. 2004) (debtor filed at least eleven cases over eight years in his name or other entities he controlled, sometimes in different jurisdictions); *In re Steeley*, 243 B.R. 421 (Bankr. N.D. Ala. 1999) (debtor filed six times – three within a thirteen-month period, at least one in a different jurisdiction)), or a husband and wife playing "bankruptcy tag" (*see e.g., In re Roeben,* 294 B.R. 840 (Bankr. E.D. Ark. 2003) (husband and wife filed six times in six years); *In re Price*, 304

5

B.R. 769 (Bankr. N.D. Ohio 2004) (husband and wife filed a total of six times in six years); *In re Yimam*, 214 B.R. at 466 (as discussed above, husband and wife took turns filing seven petitions over four years)). In all of these cases, the courts found that the debtors were abusing the bankruptcy system and that imposition of an equitable servitude was appropriate.

However, whether or not it is appropriate to impose such a remedy upon a non-debtor co-owner requires an additional consideration of due process. In some cases, the courts have ruled that a co-owner must be served with a complaint and summons pursuant to Bankruptcy Rule 7001(7). *In re Snow*, 201 B.R. at 976-77 (declining to bind four non-debtor co-owners without an adversary proceeding, particularly in this case where the movant had made no effort to serve them with the underlying motion or the notice of the hearing); *see also In re Chappelle*, 2000 Bankr. LEXIS 1910 (Bankr. D.C. April 3, 2000) (adversary proceeding is required to accomplish *in rem* order with respect to property interest of a non-debtor); *In re Graham*, 1998 Bankr. LEXIS 961 (Bankr. E.D. Pa. Aug. 3, 1998) (also finding that creditor has Federal Rule 9011 at his disposal should non-debtor co-owner file a petition on the eve of foreclosure).

In cases where the court dispensed with the formal need for complaint and summons, the conduct of the non-debtor co-owner was sufficiently egregious to impute constructive notice upon him. *In re Fernandez*, 212 B.R. 361, 371 (Bankr. C.D. Cal. 1997) (constructive notice imputed to protect the integrity of the bankruptcy process based on co-owner acting in concert with debtor to interfere with foreclosure); *In re Roeben*, 294 B.R. at 848 (facts of the particular case led court to exercise authority under 11 U.S.C. § 105(a) to override the need for formal service of process). The *Roeben* court did not do so lightly:

> "This decision finding that Spouse had constructive notice is a
> narrow one, and it rests on the egregious abuses of the Bankruptcy Code

as detailed above.  In future cases, this Court will not be inclined to impute such notice to nondebtor spouse co-owners of property who have not been joined in an adversary proceeding, absent collusion and flagrant abuses of the Bankruptcy Code."

*Id*.

So what should a court do where a non-debtor co-owner has no history of "flagrant abuse," and, in fact, has never filed a bankruptcy petition?  The cases discussed herein suggest that the creditor must initiate an adversary proceeding against that individual.  This is especially true when the non-debtor co-owner is not accused of egregious conduct or abuse of the bankruptcy process.  *In re Amey*, 314 B.R. at 870.  In that case, the non-debtor co-owner (not a spouse) of property subject to foreclosure had never filed bankruptcy before.  The court held that *in rem* relief would not be granted as to the co-owner's interest in the property because that individual was not properly before the court.

## III.   **CONCLUSION**

Although their conduct was not as egregious as the conduct described in some of the cases discussed above, the Debtors in this case have stymied their secured creditor by filing three bankruptcy petitions in order to stop foreclosure on the Property.  Imposition of an equitable servitude as to their interests was therefore appropriate, even had the Debtors not consented to the relief sought.  However, there are simply no facts before the Court to suggest that Ms. David has ever filed bankruptcy or has acted alone or in concert with the Debtors to abuse the bankruptcy process.  The Court notes that a 2002 bankruptcy case was filed in this District in the name of Desiree David.  However, it has not been demonstrated that the debtor in that 2002 case is the same Ms. David, or that Ms. David has in any way acted in concert with the Debtors or otherwise flagrantly abused the Bankruptcy Code, and the Court finds no such conduct on Ms.

David's part.  Absent such conduct, the Court will not impute constructive notice upon Ms. David by service upon her of the Lift Stay Motion.  Under the facts of this particular case, the extraordinary *in rem* relief the Secured Creditor seeks to impose upon Ms. David requires compliance with Bankruptcy Rule 7001(7).

This ruling is consistent with a practical consideration discussed by the *Amey* court.  By requiring the initiation of an adversary proceeding, the due process rights of a non-debtor co-owner with no record of abuse are protected, and a secured creditor will have the benefit of an order that is not vulnerable to attacks for lack of personal jurisdiction.  For the reasons set forth herein, the Court declines to revise its Order at [26].  A separate Order will issue.


cc:    Debtors
       Desiree David
       Robert W. Thompson, Esq.
       David B. Mintz, Esq.
       Chapter 13 Trustee
       U.S. Trustee